

# In the Missouri Court of Appeals
# Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| NEXGEN SILICA, LLC, | ) | |
| | ) | |
| Appellant/Cross-Respondent, | ) | No. ED111424 |
| | ) | No. ED111428 |
| vs. | ) | |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | Appeal from the Missouri |
| NATURAL RESOURCES, | ) | Mining Commission |
| | ) | Case No. 22-3086 |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OPERATION SAND, LLC, | ) | Filed: October 17, 2023 |
| | ) | |
| Respondent/Cross-Appellant. | ) | |

In this consolidated case, Nexgen Silica, LLC appeals the final decision of the Missouri Mining Commission denying its application for a permit to conduct surface mining operations. Operation Sand, LLC also appeals the final decision of the Missouri Mining Commission denying Nexgen's permit. Operation Sand appeals because, while the Mining Commission denied issuance of Nexgen's permit because Nexgen "did not list all persons with any interest in the land," the Mining Commission rejected Operation Sand's additional contentions that Nexgen's application failed to identify a source granting the company a legal right to mine the affected land and that DNR failed to adequately examine and investigate Nexgen's application.

Because Nexgen's permit application did not identify all parties with an interest in the land and did not contain the written consent of all parties prior to approval of the mining permit by the Department of Natural Resources, we affirm the decision of the Missouri Mining Commission to deny Nexgen's permit application.

Because Operation Sand received all of the relief it requested from the Missouri Mining Commission, namely denial of Nexgen's mining permit, Operation Sand is not aggrieved by the decision. We dismiss Operation Sand's appeal accordingly.

## Factual and Procedural Background

Nexgen Silica, LLC is a Missouri limited liability company. Nexgen specializes in the mining, extraction, processing, sales, and distribution of industrial silica sand and related pebbles, rocks, gravel, and other aggregate materials. Nexgen applied for a permit to mine sandstone in the Ste. Genevieve area.

The Department of Natural Resources ("DNR") administers the Missouri Land Reclamation Act ("the Act"), section 444.760 *et seq*. RSMo. (2016).[1] The purpose of the Act is to "strike a balance between mining of minerals and reclamation of land subjected to surface disturbance by mining." Section 444.762. The commercial mining of sandstone in Missouri requires a permit from the Missouri Mining Commission, 10 CSR 40-10.010(1)(A), which has the power to review and approve all applicable mining applications, section 444.767. The staff director of the Mining Commission is obligated to investigate an application for a mining permit, and must consider all public comments. Section 444.773.1. The staff director must then issue or deny the permit, and may impose reasonable conditions on the permit consistent with the Act. *Id*. The decision of the Mining Commission's staff director is deemed the decision of DNR. *Id*.

---

[1] References to section 444.772 are to RSMo. (Supp. 2022). All other statutory references are to RSMo. (2016).

Operation Sand, LLC is a Missouri limited liability company in good standing with its principal place of business in Ste. Genevieve, Missouri. Operation Sand, its members, and its supporters reside in the immediate vicinity of and/or downstream from the location of the silica sand mine that Nexgen sought to operate. Operation Sand contended that DNR's issuance of the surface mining permit to Nexgen, and subsequent mining operations, adversely affected the organization, its members, and supporters.

On March 4, 2022, Nexgen submitted to DNR's Land Reclamation Program a written application for a permit seeking approval to operate a surface mining operation for sandstone in Ste. Genevieve County, Missouri. The application included the five-page DNR form titled "Mine Plan and Form Instructions."

Page three of the form includes several critical elements. First, page three provides a block for listing the name, address, and phone number of the landowner and mineral rights owner, with the requirement to attach additional sheets, if needed. Second, page three includes a block asking applicants to indicate the source of their legal right to engage in mining, which reads "Source of Legal Right to Mine – (Check One) 444.772(2) or 10 CSR 40-10.020(2)(A)6." Within that block, the form asks the permit applicant to place a check mark next to one of several choices: mineral deed; warranty deed, lease, verbal; or other (describe). The block also asks for the date of the agreement. Finally, page three includes a signature block for the landowner to attest as follows:

> 1. I have received a copy, understand and give approval of the proposed post-mining land use(s) and revegetation plan(s) to be utilized during reclamation.
> 2. I understand that if the operator seeks to revise the post-mine land use(s) or revegetation plan(s), the operator shall obtain my approval and signature. I will be given a copy of the revised post-mining land use(s) and revegetation plan(s) prior to the revision being implemented.
> 3. I hereby grant to the Staff Director of the Land Reclamation Program and authorized representatives the right of entry upon our lands or surface mining operations

for the purpose of making necessary field inspections, covering land reclamation in order to ensure compliance with The Land Reclamation Act, Sections 444.760 to 444.790 RSMo.

Here, page three of Nexgen's application contained six completed sheets because of the number of owners of properties within the area to be mined. Within the block titled source of legal right to mine, "Other (Describe) ____" was marked "TBD" and the date of agreement line was blank on all six pages. As provided by section 444.773, it is not unusual for DNR to confer with an applicant to clarify information provided on the form before approving the permit. DNR requested additional information from Nexgen concerning the missing material. The application identified seven tracts of land owned by nine record landowners—eight individuals and one trust. Each landowner was also named as the mineral rights owner for their respective property.[2] The application identified no other landowners and no other parties with an interest in mineral rights.

On March 16, 2022, Nexgen informed DNR that Nexgen had signed a mining lease agreement with Missouri Proppants, LLC ("MoPro"), and this lease agreement would be the source of Nexgen's legal right to mine the property. Nexgen sent a letter the same day to DNR "to inform [DNR] that the Mining Lease Agreement between Nexgen Silica, LLC and Missouri Proppants, LLC was signed today, March 16, 2022." The lease agreement was not attached. However, the first recital in the March 16, 2022 Non-Metallic Mining Option and Lease Agreement between the lessor, MoPro, and the lessee, Nexgen, stated that "[t]he members of the Lessor, consisting of GBB LLC and Longhorn Proppants LLC are collectively the owners (the "Property Owners") of that certain land (the "Property") containing approximately 217 acres of land …." A DNR employee made a hand-written note on the application form that a lease dated March 16, 2022 comprised the source of Nexgen's right to mine. The employee noted this

---

[2] These landowners, the eight individuals and the trust, are not involved in this appeal.

4

information on all six sheets comprising page three of the Mine Plan and Form Instructions. DNR deemed Nexgen's application complete the next day.

DNR did not obtain a copy of the lease agreement, and did not require documentation of the legal status of MoPro. As a matter of practice, DNR does not require applicants to submit documentation, such as deeds and lease agreements. Rather, DNR relies upon the attestation of property owners on the application form itself to confirm there is a legal right to mine, including, as the form allows, marking the box for a "Verbal" agreement. Each person necessary to grant to the Mining Commission or DNR access to the area of land affected under the application must give written consent as provided under section 444.772.2(5).

Pursuant to section 444.772.10, notice of intent to mine was published in the newspaper, sent to the local governing body, and sent to contiguous and adjacent landowners. Following public notice, a public meeting, and a comment period, and having considered all public comments and the information provided by Nexgen during the application process, DNR issued the permit on June 30, 2022. Operation Sand challenged DNR's issuance of the permit to Nexgen by appeal to the Administrative Hearing Commission ("the AHC"). In its first amended complaint, Operation Sand alleged that issuance of the permit was unlawful, namely that issuance of the permit to Nexgen violated the statutory requirements to name all persons with interest in the land to be mined and to establish the source of Nexgen's legal right to mine the land; violated DNR's obligation to examine and pass on the application; and violated the Due Process Clause of the Missouri Constitution regarding conduct of the public meeting. Operation Sand sought the following relief on all counts in its first amended complaint:

> Based on the foregoing, [Operation Sand] respectfully requests that the Administrative Hearing Commission sustain its appeal and find that DNR failed to comply with existing law and regulations in issuing Permit 1211; find that the issuance of Permit 1211 was not substantially justified; recommend that Respondent-Missouri

5

Mining Commission reverse the June 30, 2022 decision issuing Permit 1211; award Petitioner its reasonable costs and attorneys' fees; and award such further relief deemed appropriate.

During the pendency of the administrative appeal, Nexgen sought to amend its application on September 16, 2022 by adding itself, MoPro, and GBB as parties with an interest in the land. Longhorn did not appear on the amended application as either a landowner or mineral rights owner. Nexgen stated on its September 2022 mine plan form that it had purchased in late March the tract of land and mineral rights owned by the trust. Nexgen also indicated that the other landowners identified in its March 2022 application executed mineral deeds to GBB several weeks after permit approval, and GBB in turn executed mineral deeds in favor of Missouri Proppants. The AHC conducted a contested case hearing on September 27, 2022, and issued its recommendation that the Mining Commission reverse DNR's decision to issue a permit to Nexgen.

The Mining Commission met and considered the AHC's recommended decision. The Mining Commission then issued its final decision on January 17, 2023, approving the AHC's recommended decision with modifications. The Mining Commission denied issuance of Nexgen's permit because Nexgen "did not list all persons with any interest in the land." In rendering its final decision, the Mining Commission rejected Operation Sand's additional contentions that Nexgen's application failed to list a source granting it a legal right to mine the area in its mine plan and that DNR failed to adequately examine and investigate Nexgen's application. Nexgen and Operation Sand appeal.

**Discussion**

On appeal, Nexgen seeks review of the sole reason the Mining Commission reversed the DNR's issuance of the permit—the failure to list all persons with any interest in the land to be

6

mined. On cross-appeal, Operation Sand seeks review of the Mining Commission's rejection of the other grounds Operation Sand asserted for reversing the permit, namely the source of Nexgen's legal right to mine the land and DNR's alleged failure to investigate Nexgen's application.

## Standard of Review

Administrative review of a contested case, as here, is governed by Section 536.140; *Nighbert v. City of St, Louis*, 658 S.W.3d 603, 605 (Mo. App. E.D. 2022). We will uphold an agency's decision unless it is: (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the agency; (3) not supported by competent and substantial evidence upon the whole record; (4) unauthorized by law; (5) made upon unlawful procedure or without a fair trial; (6) arbitrary, capricious, or unreasonable; or (7) an abuse of discretion. Section 536.140.2; *Nighbert*, 658 S.W.3d at 605-06. We review the agency's decision to determine whether the record in its entirety contains sufficient competent and substantial evidence to support the decision. *Id.* at 606. We review the whole record, and we no longer view the evidence in the light most favorable to the agency's decision. *Id*. We defer to the agency's findings of fact so long as they are supported by competent and substantial evidence. *Steck v. Mo. Dep't of Natural Resources*, 623 S.W.3d 176, 180 (Mo. App. W.D. 2021). We review questions of law *de novo. Saxony Lutheran High School, Inc. v. Mo. Dep't. of Natural Resources*, 404 S.W.3d 902, 906 (Mo. App. E.D. 2013).

## Nexgen's Appeal

In three points on appeal, Nexgen challenges the denial of its mining permit by the Missouri Mining Commission. First, Nexgen argues the Mining Commission improperly denied its permit application for failure to include the necessary names and signatures of MoPro's

owners in the application. Second, Nexgen argues denial of its permit was improper because MoPro's name, in fact, did appear in the application. Finally, Nexgen argues the Mining Commission has authority to issue a permit conditioned on an amended application, which addressed deficiencies raised during the administrative appeal, and that Nexgen amended its application accordingly to address the alleged deficiencies.

*Point I*

In its first point on appeal, Nexgen claims the Mining Commission's decision to deny Nexgen's mining permit because the application did not contain necessary signatures and the names of the owners of Nexgen's lessor was unlawful, in excess of the Commission's jurisdiction, and unreasonable, arbitrary, and capricious. Nexgen argues that section 444.772.2(1) does not require an application to include any signatures or the names of the owners of the applicant's lessor. Nexgen's point and argument misinterpret the statute and the Mining Commission's decision.

"Statutory interpretation is a matter of law which this Court reviews *de novo*." *Matter of Trenton Farms Re, LLC v. Mo. Dep't of Natural Resources*, 504 S.W.3d 157, 164 (Mo. App. W.D. 2016). "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019). The interpretation and construction of a statute by an administrative agency charged with its administration is entitled to great weight. *Trenton Farms*, 504 S.W.3d at 164.

Here, section 444.772.2 lists the information required to be included in an application for a mining permit:

> Application for permit shall be made on a form prescribed by the commission and *shall* include:

8

(1) *The name of all persons with any interest in the land to be mined*;

(2) The source of the applicant's legal right to mine the land affected by the permit;

(3) The permanent and temporary post office address of the applicant;

(4) Whether the applicant or any person associated with the applicant holds or has held any other permits pursuant to sections 444.500 to 444.790, and an identification of such permits;

(5) *The written consent of the applicant and any other persons necessary to grant access to the commission or the director to the area of land affected under application ...*;

(6) A description of the tract or tracts of land and the estimated number of acres thereof to be affected by the surface mining of the applicant for the next succeeding twelve months; *and*

(7) Such other information that the commission may require as such information applies to land reclamation.

(Emphases added).

In addition, 10 CSR 40-10.020 provides the requirements for a mining permit application in more detail. The Mining Commission shall prescribe the form and content of the application to be submitted for an operator to obtain a mining permit. 10 CSR 40-10.020(1). "The applicant *must* submit the required information *before* a permit may be issued." *Id*. (emphases added). As required by section 444.772, an applicant shall submit a complete application package, including the authorized written consent of the applicant and any other persons necessary to grant access to the area of land affected under the application or permit during all phases of operation and reclamation. 10 CSR 40-10.020(2)(B). The applicant shall obtain a signed approval of the post-reclamation land use from the landowner, or shall provide other written proof that the applicant determined the post-reclamation land use in conjunction with the landowner. 10 CSR 40-10.020(2)(C).

9

The AHC determined that the permit "was issued unlawfully in that Nexgen did not comply with the requirement to list all known property owners on its application." The AHC found that:

> The [Land Reclamation] Program became aware of MoPro's existence when [Nexgen] informed [DNR] that Nexgen entered into the Agreement with MoPro purportedly granting Nexgen a legal right to mine the property. It was incumbent on Nexgen at that time to update the names of persons with an interest in the property and ensure their signatures granting [Land Reclamation] Program staff the right to enter the property and agreeing to the plan for land reclamation after mining operations cease were added to the application.

Adopting the AHC's recommendation to deny the permit, the Mining Commission held that "the issuance of Permit Number 1211 is denied because the applicant did not list all persons with any interest in the land." Nexgen acknowledged at oral argument that neither GBB nor Longhorn were named in the application before DNR issued the permit.

We agree with the Mining Commission, and find that Nexgen's permit application was incomplete. The application failed to identify multiple parties with an interest in the land as required by section 444.772.2(1). The application also failed to include the written consent of any persons necessary to grant DNR or the Mining Commission access to the land, as required by section 444.772.2(5) and 10 CSR 40-10.020(2)(B) and (C).

Section 444.772.2(1) explicitly requires that the application contain "[t]he name of all persons with any interest in the land to be mined." This statutory wording is clear, and we see no ambiguity that might confuse an applicant. The mine plan form developed by DNR—as authorized by section 444.772.2 and 10 CSR 40-10.020(1)—requests the name and contact information of each landowner; asks whether the landowner is also the owner of the mineral rights; and if not, requests the name and contact information of the mineral rights owner. Nexgen's March 4, 2022 application involved seven tracts of land totaling 217 acres and

identified nine record property owners, specifically eight individuals and one trust. Each of the identified property owners was also named as the mineral rights owner for their respective property. No other property owners with an interest in the land were listed.

Less than two weeks later, on March 16, 2022, Nexgen, as lessee, executed a Non-Metallic Mining Option and Lease Agreement with MoPro, as lessor. The lease agreement recited that MoPro's members, GBB and Longhorn, "are collectively *the owners* (the 'Property Owners') of that certain land (the 'Property') containing approximately 217 acres of land …." (Emphasis added). By the end of March 2022, Nexgen itself had purchased the tract of land belonging to the trust. Nevertheless, Nexgen did not seek to update, and did not identify MoPro, GBB, Longhorn, or itself on the application form as parties with any interest in the land prior to DNR's approval of the mining permit application. Identifying only some owners of the land and some owners of the mineral rights for the property included in the mine plan, while excluding others, does not fulfill the statutory requirements. Section 444.772.2(1) requires that "the application shall include all names … " and failure to include all names results in an incomplete application. Further, 10 CSR 40-10.020.1 requires all required information must be submitted before a permit is issued.

In addition, section 444.772.2(5) expressly requires "[t]he written consent of the applicant and any other persons necessary to grant access to the commission or the director to the area of land affected under application …." Here, Nexgen's application included only the signatures of the nine owners of the land and mineral rights that Nexgen originally identified in its March 4, 2022 application. Prior to DNR's approval of Nexgen's permit, Nexgen did not provide the requisite written consent from its lessor, MoPro, or from GBB or Longhorn, who were identified as the "Property Owners" in the Non-Metallic Mining Option and Lease

11

Agreement. The lack of written consent of any person necessary to grant access to the affected land fails to comply with section 444.772.2(5), and results in an incomplete application. Nexgen argues that the Mining Commission denied the permit because the application did not include the names of the owners of Nexgen's lessor and because the application did not include signatures, neither of which are required by the statute. We disagree with Nexgen's characterization of the basis for the Mining Commission's denial, and are not persuaded by this argument.

It was not until September 16, 2022, after the permit was issued, but during the pendency of the appeal conducted by the AHC, that Nexgen sought to amend its application by adding itself, MoPro, and GBB as parties with an interest in the land. Notably, Longhorn did not appear as either a landowner or mineral rights owner on the amended application. Nexgen stated on the September 2022 version of its mine plan form that it had purchased the tract of land and mineral rights owned by the trust in late March 2022, thus making Nexgen a landowner and mineral rights owner that should have been included on the application pursuant to section 444.772.2(1). Nexgen also stated that the landowners of the other six tracts identified in the March 2022 application executed mineral deeds to GBB several weeks after permit approval, and GBB in turn executed mineral deeds in favor of MoPro in August 2022.

The Mining Commission adopted the AHC recommendation and denied Nexgen's permit because Nexgen "did not list all persons with any interest in the land." It is clear from the record that Nexgen did not list all parties with an interest in the land, namely GBB, Longhorn, MoPro, and Nexgen itself as required *before* a permit may be issued. As a result, Nexgen's application was substantially incomplete, and did not comply with the express requirements enumerated in section 444.772.2 or 10 CSR 40-10.020. We find the Mining Commission's decision was not unlawful; was not in excess of its jurisdiction; and was not unreasonable, arbitrary, or capricious.

12

The Mining Commission properly denied Nexgen's mining permit on appeal. We deny Nexgen's Point I.

*Point II*

In its second point, Nexgen claims the Mining Commission's decision to deny Nexgen's permit for failure to include MoPro's name in the application was arbitrary, capricious, unreasonable, and unsupported by competent and substantial evidence upon the whole record which showed that Nexgen's application included MoPro's name. Nexgen argues that its March 16, 2022 letter to DNR was a part of its permit application and included MoPro's name. Therefore, Nexgen contends, its mining permit application included MoPro's name, contrary to the Commission's stated basis for denial of the permit.

Nexgen's letter to DNR stated in relevant part "[t]he purpose of this correspondence is to inform you that the Mining Lease Agreement between Nexgen Silica, LLC and Missouri Proppants, LLC was signed today, March 16, 2022." It is this reference to MoPro that Nexgen now contends comprises inclusion of MoPro's name in its mining permit application. Even assuming *arguendo* that we were to accept Nexgen's contention, a single reference to MoPro as a party to the lease agreement does not correct Nexgen's failure to identify itself, MoPro, GBB, or Longhorn as owners of land and/or mineral rights in the application prior to approval of the permit. We deny Nexgen's Point II.

*Point III*

In its third point, Nexgen claims the Mining Commission's decision to deny Nexgen's permit for lack of authority to issue a permit conditioned on an amended application addressing deficiencies raised in an appeal was arbitrary, capricious, unreasonable, unlawful, and unsupported by competent and substantial evidence upon the whole record. Nexgen argues that

13

the Mining Commission has the authority under the Land Reclamation Act to allow amendments of an application on appeal, and that the record on appeal shows Nexgen amended its application during the appeal to address Operation Sand's alleged deficiencies. We disagree.

Administrative agencies are products of the legislature, and as such, they possess only those powers that the statutes expressly confer or necessarily imply. *Saxony*, 404 S.W.3d at 906. When there is no express power granted to an agency for a particular action, such power is properly implied only when it necessarily follows from the statutory language. *Id*.

Section 444.772.2 expressly requires an applicant for a mining permit to include seven enumerated criteria in its application, including the name of all persons with any interest in the subject land and written consent of persons necessary to grant access to the land. "The applicant *must* submit the required information *before* a permit may be issued." 10 CSR 40-10.020(1) (emphases added). As discussed in Points I and II, Nexgen did not comply with this requirement, instead seeking to amend its incomplete application during the pendency of the administrative appeal brought by Operation Sand after DNR issued Nexgen's mining permit.

The legislature has provided no express statutory authority for amendment of an incomplete application after DNR has issued the permit, and the permit issuance is pending on appeal. The only reference in the Act to amendment of a permit application involves the addition of land to the mine plan. Section 444.772.5 states in pertinent part that "[a]n operator desiring to have his or her permit amended to cover additional land may file an amended application with the commission. … [T]he director shall, if the applicant complies with all applicable regulatory requirements, issue an amendment to the original permit." Section 444.772.5.[3]

---

[3] The regulations further provide that "[w]hen the operator desires to add additional acreage to his/her permit or to substantially revise the methods of operation or reclamation reflected in the original application, an amended application shall be filed. The application shall comply with all the items as prescribed in section (2) of this rule." 10 CSR 40-10.020(5).

14

This single statutory reason allowing amendment of an application—for the purpose of adding land to the mine plan—shows that the legislature knew how to allow for amendment of a mine permit application when it desired to allow such amendment. The legislature, however, chose to expressly allow amendment only to add land to the permit application. The legislature made no express provision for amendment of incomplete applications while on appeal to the AHC. Likewise, the power to allow amendment of incomplete applications after issuance of a permit and during the appeal process does not necessarily follow from the statutory language of the Act.

Nexgen cites *Saxony Lutheran High School, Inc. v. Missouri Department of Natural Resources*, for the proposition that the Mining Commission has authority to allow amendment of an incomplete permit application after issuance of a permit and during the pendency of an administrative appeal. 404 S.W.3d at 904. *Saxony* is distinguishable, however. In *Saxony*, the Missouri Land Reclamation Commission, now the Missouri Mining Commission, issued a permit to the applicant containing a condition that brought the application into compliance with legislation passed while the permit application was pending. *Id*. at 904. The permit had not been issued yet. *Id*. at 905. The circuit court reversed the Commission's decision to issue the permit, and the Commission and the permit applicant appealed to this Court. *Id*. at 904.

This Court upheld the Commission's issuance of the mining permit. *Id*. Legislation enacted during the pendency of the application process changed the law to prohibit issuance of a surface mining permit for any mine plan whose boundary fell within 1000 feet of "any real property where an accredited school has been located for at least five years." *Id*. at 905. The application as submitted in *Saxony* showed that the mine plan boundary was located only about

15

55 feet from the school's property line. *Id*. The permit applicant consented to move the boundary of its mine plan to create the required 1,000-foot buffer in accordance with the new law, and filed a motion requesting issuance of its permit pursuant to the revised mine plan boundary. *Id*. The Commission granted the permit to operate a mine, subject to the condition that the mine plan boundary be located 1,000 feet from Saxony's property line. *Id*.

The issue in *Saxony* was whether the Commission had the power to impose conditions upon *pending* permit applications that would bring those permits into compliance with the new law. *Id*. at 906. Here, in contrast, the question is whether the Commission has the power to allow Nexgen to amend an incomplete application *after* issuance of a permit and during the administrative appeal challenging the application. As the Court observed in *Saxony*, "the power to modify a permit *after* it has been issued is different than the power to impose a condition on a permit as part of the process of initial approval." *Id*. at 907.

Further, the 1,000-foot-buffer requirement in *Saxony* went into effect during the formal public hearing before the Commission. *Id*. at 911. That meant the first opportunity for the permit applicant to comply with this new statutory requirement was when the application was in front of the Commission pending a decision to issue the permit. *Id*. In our case, Nexgen had months to amend its application between filing in early March and DNR's approval of the permit in late June 2022. Yet Nexgen took no action to modify its incomplete application, seeking to amend only after the permit was issued and the appeal was pending before the AHC. We find Nexgen's invocation of *Saxony* unavailing.

We find the present case is more akin to *Mueller v. Missouri Hazardous Waste Management Commission,* 904 S.W.2d 552 (Mo. App. S.D. 1995). In *Mueller*, DNR issued the permit for a hazardous waste disposal facility. 904 S.W.2d at 553. Area residents appealed

16

DNR's decision to the Missouri Hazardous Waste Management Commission, which modified the permit, conditionally approved it, and directed DNR to take certain "remedial measures." *Id*. The Court determined that the Missouri Hazardous Waste Management Commission did not have statutory authority to modify a permit on appeal *after* DNR had issued the permit. *Id*. at 554. The Southern District observed, as we have here, that the legislature did not expressly delegate power to modify a permit on appeal from a DNR decision granting an initial permit application. *Id*. at 557.

We conclude that the Mining Commission has no statutory authority to allow Nexgen to amend an incomplete application during an appeal after DNR has issued a permit. We deny Point III.

Operation Sand's Appeal

In three points on cross-appeal, Operation Sand challenges the final decision of the Mining Commission with regard to the source of Nexgen's legal right to mine the land and DNR's investigation of Nexgen's permit application. Operation Sand contends the Mining Commission erred and abused its discretion in rendering its final decision because: (1) Nexgen entered a lease agreement with MoPro, a nonexistent entity that could not provide written consent to DNR to access the property as required by section 444.772.2(5); (2) Nexgen's lease with MoPro was an option contract and did not confer any present legal right to Nexgen to mine the land; and (3) DNR failed to take reasonable actions to investigate whether Nexgen had a present legal right to mine the land affected by the permit.

*Operation Sand's Standing As An Aggrieved Party*

Before reaching the merits of Operation Sand's points on cross-appeal, we must first determine whether Operation Sand is an aggrieved party with standing to appeal the Mining

17

Commission's decision. The doctrine of standing is related to the doctrine prohibiting courts from rendering advisory opinions. *Davis v. St. Charles County*, 250 S.W.3d 408, 412 (Mo. App. E.D. 2008).

Operation Sand appealed to the AHC the decision by DNR to issue Nexgen's requested surface mining permit. Operation Sand's Count I alleged that Nexgen failed to identify in its application all persons with a legal interest in the property to be mined. Count II alleged that Nexgen failed to comply with the statutory requirement to show that it had the legal right to mine the affected property. Count III alleged that DNR failed to comply with its statutory duty to investigate Nexgen's application. Count IV alleged that Nexgen's planned operation violated a Ste. Genevieve County health ordinance, and therefore Nexgen failed to show it had the legal right to mine the affected property. Count V alleged that Operation Sand, its members, and supporters were denied due process under the Missouri Constitution in connection with the public meeting held by Nexgen. Count VI alleged that Nexgen failed to comply with Ste. Genevieve County health ordinances, and so failed to show that it had a legal right to mine the land.

Operation Sand alleged in each count that DNR's decision to issue the permit was unlawful. For all counts of its first amended complaint, Operation Sand sought the following relief:

> Petitioner respectfully requests that the Administrative Hearing Commission sustain its appeal and find that DNR failed to comply with existing law and regulations in issuing Permit 1211; find that the issuance of Permit 1211 was not substantially justified; recommend that Respondent-Missouri Mining Commission reverse the June 30, 2022 decision issuing Permit 1211; award Petitioner its reasonable costs and attorneys' fees; and award such further relief deemed appropriate.

The Mining Commission ruled in favor of Operation Sand with regard to Count I, thus vacating the mining permit issued to Nexgen, but rejected Operation Sand's arguments in its

18

other counts. Operation Sand filed a cross-appeal based on the Mining Commission's rejection of Counts II (source of legal right to mine) and III (lack of investigation) of the first amended complaint as bases for denial of Nexgen's mining permit.

DNR has filed a motion to dismiss Operation Sand's cross-appeal, arguing that Operation Sand is not an aggrieved party because the Mining Commission granted the relief Operation Sand sought in that the Mining Commission vacated Nexgen's mining permit granted by DNR. Operation Sand counters that it is, indeed, an aggrieved party, and argues that:

> [T]he Mining Commission did not find that Respondent-DNR "failed to comply with existing law and regulations in issuing Permit 1211" (which would encompass Counts I, II, and III) and did not "find that the issuance of Permit 1211 was not substantially justified." Consequently, because the Mining Commission's decision did not include all the relief requested by Operation Sand, Operation Sand may appeal from the unfavorable and adverse decision relating to Counts II and III.

The Mining Commission's decision is subject to judicial review pursuant to chapter 536, except that the Court of Appeals district having territorial jurisdiction corresponding with the county where the mine is located shall have original jurisdiction. Section 444.773.2. "Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case" has a right to judicial review. Section 536.100.

The right to appeal is statutory, and it is essential that a party be aggrieved by the judgment appealed. *E.M. v. Gateway Region Young Men's Christian Ass'n*, 613 S.W.3d 388, 400 (Mo. App. E.D. 2020). For Operation Sand to be "aggrieved" by the action of the Mining Commission, Operation Sand must "demonstrate a specific and legally cognizable interest in the subject matter of the administrative decision and that the decision will have a direct and substantial impact on that interest." *Davis*, 250 S.W.3d at 412 (quoting *City of Eureka v. Litz,* 658 S.W.2d 519, 522 (Mo. App. E.D. 1983)). "The decision must operate prejudicially and directly upon [Operation Sand's] personal or property rights or interests and such must be

19

immediate and not merely a possible remote consequence." *Id*. A party cannot be aggrieved when the party obtained all of the relief requested. *E.M.*, 613 S.W.3d at 400.

Operation Sand further contends that the organization, "its members, and its supporters have legally protectable interests that are adversely affected and aggrieved by the adverse environmental and health effects resulting from Nexgen's operation of a silica frac sand mine located in the immediate vicinity of their homes and along Establishment Creek." But the Mining Commission denied Nexgen a permit to conduct the mining operations that Operation Sand argues affect its legally protectable interests, and we have affirmed that decision. Nexgen will not be operating a silica frac sand mine in the area based on the present permit application. As a result, the legally protectable interests for which Operation Sand advocates have been protected as Operation Sand sought.

Operation Sand cites *Smith v. City of St. Louis* for the proposition that a party that prevailed at trial may nevertheless appeal when the trial court rejected the arguments raised in the party's cross-appeal. 395 S.W.3d 20, 27 (Mo. banc 2013). In *Smith*, plaintiffs sought a temporary restraining order, a preliminary injunction, a permanent injunction, and a declaratory judgment voiding two St. Louis City ordinances authorizing a tax increment financing plan to redevelop approximately 1500 acres within the City. *Id*. at 22-23. The defendants appealed the judgment, which voided the ordinances on a single basis not properly raised by either the pleadings or the evidence. *Id*. at 23, 26. The trial court also denied motions for attorney's fees filed by the plaintiffs and intervenors. *Id*. at 24. After concluding the judgment against the defendants was voidable to the extent it exceeded the scope of the pleadings, the Supreme Court found the plaintiffs were aggrieved and entitled to cross-appeal. *Id*. at 27.

20

*Smith* is distinguishable from our case. First, *Smith* involved a declaratory judgment action in which the plaintiffs sought multiple declarations that certain City ordinances were void in multiple respects. *Id*. Here, in contrast, the current case does not involve an action for a declaratory judgment, nor does it involve the validity of a municipal ordinance. Second, the Supreme Court reversed the lower court's judgment in favor of the plaintiffs on the basis that it exceeded the scope of the pleadings, leaving the plaintiffs wholly unsuccessful in having the ordinances declared void. *Id*. at 26. In the instant case, Operation Sand sought reversal of Nexgen's permit. Unlike in *Smith*, Operation Sand prevailed in obtaining denial of Nexgen's mining permit, which comprises the relief it requested in every count of its amended complaint. We have affirmed the Mining Commission's decision to deny Nexgen's permit, and thus Operation Sand remains a prevailing party.

Because we affirm the Mining Commission's decision to vacate the mining permit that DNR issued to Nexgen, Operation Sand has obtained all of the relief it sought, namely denial of Nexgen's application for a surface mining permit. As a result, Operation Sand is not aggrieved by the decision, and so has no basis to appeal the Mining Commission's determination of additional bases that Operation Sand argues should apply to deny Nexgen's mining permit application. *See E.M.*, 613 S.W.3d at 400 (when this Court affirmed dismissal of student's petition against teacher based on public-duty doctrine, teacher obtained all relief she sought so that teacher was not aggrieved by judgment and had no basis to appeal trial court's determination of sovereign immunity and official immunity questions). Because Operation Sand received the relief it requested, we grant DNR's motion to dismiss, and hereby dismiss Operation Sand's cross-appeal.

21

*Operation Sand's Motion For Attorney's Fees*

Operation Sand has filed a motion with this Court seeking attorney's fees and expenses from DNR. Operation Sand alleges it is entitled to attorney's fees because it is the prevailing party, and the legal position taken by DNR before the AHC and in this proceeding is not substantially justified.

Section 536.087.1 provides that a party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the State, shall be awarded reasonable attorney's fees and expenses unless the position of the State is found to be substantially justified or that special circumstances make an award unjust. "Substantially justified" means that the agency's position was "clearly reasonable." *M.F. v. Stringer*, 617 S.W.3d 868, 872 (Mo. App. E.D. 2021). "The fact that the state has lost the agency proceeding or civil action creates no legal presumption that its position was not substantially justified." Section 536.087.3.

Section 444.773.1 provides that permit applications shall be promptly investigated and a decision made within six weeks after completion of the public notice and public hearing process. Here, The Mining Commission found "that the statute does not specify a procedure for investigating applicants and thus the investigative procedure used by the [Land Reclamation] Program did not provide grounds to deny Nexgen a permit."

We agree with the Mining Commission, and find that DNR's position was substantially justified, given the statutory scheme the legislature has enacted for the application, review, and determination process for mining permits. As a result, we deny Operation Sand's motion for attorney's fees and expenses.

**Conclusion**

Nexgen's permit application did not identify all parties with any interest in the land and did not contain the written consent of all parties prior to approval of the mining permit by DNR. In addition, the Mining Commission has no statutory authority to allow Nexgen to amend an incomplete application during an appeal after DNR has issued a permit. We affirm the decision of the Missouri Mining Commission to deny Nexgen's permit application.

Operation Sand prevailed in obtaining denial of Nexgen's mining permit issued by DNR, which is the relief it requested in every count of its first amended complaint. Operation Sand is not aggrieved by the Mining Commission's decision, which denied Nexgen a mining permit although it declined to deny the permit on all of the bases urged by Operation Sand. Because Operation Sand received the relief it requested—denial of Nexgen's mining permit—we dismiss Operation Sand's cross-appeal. We also deny Operation Sand's motion for attorney's fees.[4]

_____
Angela T. Quigless, Judge

Lisa P. Page, P.J. and Gary M. Gaertner, Jr., J., concur

---

[4] All other pending motions are denied.